IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Criminal Action No. 3:11CR161–HEH |
| BRADLEY DOUGLAS WEIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
(Defendant's Motion for Judgment of Acquittal)

Following a two-day trial with a jury, Defendant Bradley Douglas Wein ("Wein" or "Defendant") was convicted of obstruction of an official proceeding, as charged in Count Thirteen of a second superseding Indictment ("the Indictment"). That same jury acquitted the Defendant on eleven other counts—nine counts of mail fraud and two counts of aggravated identify theft. Count Twelve was dismissed by the Court at the close of the government's evidence.

The case is presently before the Court on the Defendant's renewed Motion for Judgment of Acquittal on Count Thirteen. Both the government and counsel for the Defendant have filed detailed memoranda of law supporting their respective positions. The Court heard oral argument on May 11, 2012. For the reasons discussed below, the Defendant's motion will be denied.

Count Thirteen of the Indictment charges the Defendant with violating Title 18 U.S.C. §§ 1512(c)(2) and 2(b). The operative charging language of this count alleges that the Defendant, in connection with "a criminal case then pending in this Court, . . .

provided to his defense counsel false, fraudulent, and fictitious documents that were then filed as attachments to pleadings in this matter . . . to advance his defense." (Indictment 8, ECF No. 59.) The documents forming the basis of Count Thirteen were two letters written by the Defendant, then a practicing attorney, to his client, Lillian T. Pettaway ("Ms. Pettaway"), dated June 3, 2008, and January 12, 2009. These documents were provided by the Defendant to his trial counsel on June 29, 2011 following his arrest in this case. Defense counsel subsequently attached these two letters to a pretrial motion filed with the Court seeking the dismissal of Counts One through Nine of the Indictment.[1] (Def.'s Mot. Dismiss, Ex. 1, ECF No. 40-1.) This motion was denied without prejudice and with specific leave to renew if other evidence supporting the defense's position emerged during the course of the trial. These letters purportedly supported the Defendant's contention that he was authorized to use Ms. Pettaway's credit cards to satisfy her outstanding legal fees. Specifically, the letter dated January 12, 2009, advised Ms. Pettaway of Wein's attempts to settle Ms. Pettaway's outstanding credit card balances for personal debts incurred by Wein himself.

In the Defendant's Motion for Judgment of Acquittal, he contends that the government's evidence, even when weighed in its most favorable light, was insufficient to sustain a verdict of guilty on the charge of obstruction of official proceeding. His motion challenges the verdict on three fronts. First, he contends that there was insufficient evidence of a nexus between the January 12, 2009 letter and the underlying official proceeding, "which was the indictment charging him with aggravated identity

---

[1] It is beyond question that defense counsel were unaware of the falsity of these documents.

theft and mail fraud in 2008." (Def.'s Mot. J. Acquittal 7, ECF No. 109.) The Defendant further argues that there was insufficient evidence that he acted corruptly by turning over the letters to his defense counsel. Finally, he maintains the evidence fell short of demonstrating beyond a reasonable doubt that the letter dated January 12, 2009, was fraudulent or knowingly false.

At the close of the government's evidence, the Defendant initially moved for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(a), which was denied. After the jury returned its verdict of guilty on Count Thirteen, counsel for the Defendant renewed the Motion for Judgment of Acquittal under Rule 29(c). This Court reserved judgment in order to afford both the defense and the government an opportunity to file memoranda of law supporting their positions.

In reviewing a motion filed under Rule 29(c) for judgment of acquittal, this Court "must uphold a jury verdict if there is substantial evidence, viewed in the light most favorable to the Government, to support it." *United States v. Perkins*, 470 F.3d 150, 160 (4th Cir. 2004) (*citing Burks v. United States*, 437 U.S. 1, 17, 98 S. Ct. 2141, 2150 (1978)). In *Perkins*, the Fourth Circuit restated the time-honored definition of "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." 470 F.3d at 160 (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). In conducting its review of a Rule 29(c) motion, the Court must consider "circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be

established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

In assessing the Defendant's Rule 29 motion, the Court must be mindful that it "may not weigh the evidence or review the credibility of the witnesses." *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). And where the evidence supports differing reasonable interpretations, "the jury decides which interpretation to believe." *Id.* (quoting *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994)); *see also United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003).

Because the Rule 29 motion presently under consideration by the Court was made after the return of the jury's verdict, the Court may consider all evidence introduced by both parties in determining whether the evidence supports the jury's verdict on Count Thirteen. *See* Fed. R. Crim. P. 29(b).

The evidence in this case revealed that during the relevant time period, Wein was a practicing attorney in the Commonwealth of Virginia with offices in the City of Richmond. The victim, Lillian Pettaway, was a lady, approximately 90 years old, in need of assistance with her finances and personal affairs. According to the evidence, Ms. Pettaway retained Wein and executed a formal contract for services on January 12, 2005. This contract appointed Wein to serve as her power of attorney and also purportedly authorized Wein to use Ms. Pettaway's credit to satisfy his bill for services and other expenses incurred in her representation. Furthermore, on March 3, 2005, Ms. Pettaway signed a "General Power of Attorney" reiterating Wein's power to act on Ms. Pettaway's behalf with respect to finances and other related affairs. In furtherance of his defense, Wein's former attorney, Christopher Collins ("Mr. Collins"), provided the prosecution

4

with not only a copy of the January 12, 2005 contract for services, but a May 5, 2008 letter explicitly authorizing his client's use of Ms. Pettaway's credit cards to pay his client's legal fees. These documents were supplied in 2009, shortly after Wein became aware that he was the target of a criminal investigation. Mr. Collins also advised the U.S. Attorney's Office that his client had additional documentation if needed.

The government's evidence, on the other hand, essentially sought to portray Wein's evidence of consensual use of Ms. Pettaway's credit as fabricated. To support this contention, the government introduced a tapestry of circumstantial evidence arguably inconsistent with Wein's claim of authorized use. This included Wein's use of Ms. Pettaway's credit card to purchase personal items such as coins and to defray vacation expenses. These purchases allegedly began shortly after Ms. Pettaway was transferred from Imperial Plaza, where she normally resided, to Manor Care, a rehabilitation facility, following treatment for a broken hip.

The government argued to the jury that the circumstances of the coin purchases were highly probative of guilt. In one transaction, Wein signed the victim's name and represented himself to be Ms. Pettaway's estate planner, purchasing the coins as an investment for her. In another, he claimed to be a relative. When Wein attempted a third purchase, the coin dealer requested some form of proof of permission to use the card. Wein terminated the transaction without explanation. The total cost of the gold and silver coins purchased by Wein was approximately $12,500.

The government also points to evidence that Wein submitted a change of address form to reroute Ms. Pettaway's mail to his law office during her temporary stay in the

5

rehabilitation facility.[2] Upon Ms. Pettaway's return to her apartment at Imperial Plaza, an assisted living facility, Ms. Pettaway inquired of the mail carrier where her mail was going. She also, according to the evidence, went to the Bank of America branch in the lobby of Imperial Plaza and sought information as to where her account and credit card statements were being sent. Furthermore, the government introduced evidence that Wein attempted to settle a portion of the credit card debt that he had incurred with the card issuers. In his conversations with these credit card issuers, he represented himself as the son of Ms. Pettaway.

In addition, the government's evidence revealed that in 2010, the family of Ms. Pettaway instituted legal proceedings to remove Wein as her power of attorney. The family took this action when Wein failed to return repeated telephone calls beginning shortly after learning he was the target of a federal investigation.[3] As part of the legal action to remove Wein as power of attorney, the Court appointed another attorney to serve as *guardian ad litem*. Wein declined to respond to any of that attorney's inquiries seeking information about Ms. Pettaway's credit card accounts. On the morning prior to the court hearing on the family's removal petition, Wein left a voicemail for the *guardian ad litem* advising her that he would not appear in court for the hearing. Wein also made no contact with the successor guardian and conservator appointed by the court to advise

---

[2] The government argued that the "printed handwriting on this change of address form was remarkably similar to handwriting on another change of address form Wein later submitted to the Post Office for his law practice." (Gov't's Response to Def.'s Mot. J. Acquittal 6, ECF No. 110.)

[3] The government's evidence indicated that Ms. Pettaway's family had an increased need to confer with Wein after Ms. Pettaway suffered a debilitating stroke in 2009.

her of the credit card debts he had incurred. When Ms. Pettaway's property was inventoried at the direction of the conservator, no coins or correspondence authorizing Wein to use Ms. Pettaway's credit cards for personal expenses were found. Ms. Pettaway died before the Indictment was returned.

Although the jury returned a verdict of not guilty on the mail fraud and aggravated identity theft counts, the government stresses that the evidence as to those charges may be considered by the Court to provide context to the two purportedly bogus letters forming the basis of Count Thirteen, the obstruction of an official proceeding charge. *United States v. Wagner*, 382 F.3d 598, 611 n.2 (6th Cir. 2004).

The two letters referred to in Count Thirteen were dated June 3, 2008, and January 12, 2009. (Gov't's Trial Exs. 18C-2, 14–15.) In the June 3, 2008 letter, Wein ostensibly describes a transaction on Ms. Pettaway's credit card for the purchase of gold coins. Also included were itemized receipts for the coins purchased. The government contends that this letter was an after-the-fact fabrication. In its view, if the letter was intended to merely inform Ms. Pettaway of authorized charges, a copy of the credit card receipt would have been sufficient.

According to the government, the January 12, 2009 letter contains a conspicuous flaw that further enhances its fabrication theory. This letter, addressed to Ms. Pettaway, purported to describe in some detail Wein's negotiations with Bank of America and Wachovia Bank concerning the outstanding balance on three of her credit cards. His representations in the letter with respect to the two Bank of America accounts are consistent with the bank records in evidence. This, the government maintains, was not

the case with respect to the Wachovia account. (Gov't's Trial Exs. 7; 19D.)

Drawing the Court's attention to its trial exhibit 7, the government points out that the bank's account records reflect that the settlement mentioned in the January 12, 2009 letter actually occurred on May 29, 2009—a little over four months *after* the letter was allegedly written. Therefore, the government argues, it is inconceivable that Wein could have forecast that the bank would settle a $9,408.41 debt for $1,500.00.[4] (Gov't's Trial Ex. 7-16.) This inconsistency was a critical element of the government's final argument to the jury. They essentially presented the jury with two alternative explanations—fabrication or clairvoyance. The jury apparently chose the former.

To counter this evidence, the Defendant offered the testimony of a forensic expert in the field of computer data examination. The expert described to the jury the methodology he employed to compare the internal digital date and time stamps on Wein's computer with the January 12, 2009 date on the letter. He testified that in his opinion, the internal data confirmed that the letter was created or last modified on January 12, 2009.

On further examination, the expert clarified his findings and stated that the electronic date and time stamp data in Wein's computer had not been altered or modified since November 22, 2010. On that date, Wein transferred the database from one computer to another. The expert candidly conceded on cross-examination that he could

---

[4] In urging this Court to discount the significance of the discrepancy, the Defendant emphasizes that these figures were taken from bank records which were not verified for accuracy by the testifying bank representative. However, as with all evidence, the jury's assessment of its weight governs. *Wilson*, 118 F.3d at 124.

not determine with certainty whether the internal date and time stamp had been altered prior to that date.

Wein contends that even if the government's evidence is viewed in its most favorable light, it is insufficient to support a conviction for obstructing an official proceeding. He identifies the fatal shortcoming as the absence of any nexus or logical link between the obstructive act and the official proceeding. Citing *United States v. Matthews*, 505 F.3d 698 (7th Cir. 2007), Wein argues that 18 U.S.C. § 1512 requires proof of a relationship between the alleged obstructive act and the effected court proceeding. *Id.* at 707–08. Moreover, § 1512 also requires that the obstructive act be undertaken with a corrupt motive. *Id.* at 706. Relying on *Martin v. United States*, 166 F.2d 76, 79 (4th Cir. 1948), Wein construes corrupt motive as synonymous with improper motive.

Turning first to the nexus strand of Wein's argument, he reiterates that his defense was consent—specifically that he received permission from Ms. Pettaway to use her credit cards. The January 12, 2009 letter, he maintains, was merely intended to keep her advised of their use, and perhaps the status of her accounts. In his view, the contents of the letter had no bearing or relevance to his defense of permissible use. In fact, at oral argument, counsel for Wein advised the Court that in retrospect, it may have been improvident on her part to offer the January 12, 2009 letter in support of her client's defense. This reasoning unfortunately misses the mark. The letter's evidentiary value does not negate the intent underlying its presentation to the Court or the impact of the expert testimony supporting its authenticity. Clearly the document was offered to bolster

Wein's bona fides.

The government argued, apparently persuasively, that both the January 12, 2009 and the June 3, 2008 letters were deceptively intended to invite the impression that Wein was dutifully keeping Ms. Pettaway abreast of his use of her credit cards. This would have been inconsistent with the government's allegations of corrupt unauthorized use. If nothing else, in the government's eyes, it was calculated to sow the seeds of doubt and muddle their case. The government reinforces its position by reminding the Court that the Defendant relied on the letters to support his pretrial motion to dismiss and to buttress his defense at trial. How then, the government asks, could they not be logically linked to the charges in the Indictment. The Court tends to agree. To satisfy this element, the government need only establish that the letter had "a relationship in time, causation, or logic" with the mail fraud and aggravated identity theft charges. *United States v. Aguilar*, 515 U.S. 593, 599, 115 S. Ct. 2357, 2362 (1995).

Moreover, once the jury concluded that the letters were fabricated, the element of corrupt intent was readily inferable from Wein's presentation of the letters to his attorney as evidence of his innocence.

Finally, Wein contends that there was no evidence that he personally instructed his attorneys to employ the letters in his defense. The letters, however, were presented by Wein to his counsel in a file which he described to them as providing him with a defense. This act on his part, which tracks the language of Count Thirteen of the Indictment, if knowingly done satisfies the requirement of 18 U.S.C. § 2(b).

Despite the Defendant's acquittal on the mail fraud and aggravated identity theft

counts, both sides presented substantial evidence. Although the evidence pertaining to those charges provided probative context for the obstruction of proceedings charge, each count turned on its own merits. *See United States v. Sarin*, 10 F.3d 224, 225 (4th Cir. 1993). The immediate task at hand is not to second-guess the jury's analysis of the evidence, but to determine whether the evidence was sufficient to support a finding of guilt beyond a reasonable doubt. *Burgos*, 94 F.3d at 862. In sorting out the conflicting evidence, the jury elected to believe the government's interpretation, as was their prerogative. *Murphy*, 35 F.3d at 148.[5] Even though the government's evidence fell short of proving fraud or identity theft beyond a reasonable doubt, the contents and timing of the letters, coupled with the circumstances of their production and Wein's evasive acts, particularly when viewed in the light most favorable to the government, could support a "rational determination of guilty [on the obstruction count] beyond a reasonable doubt." *Burgos*, 94 F.3d at 863 (quoting *Powell*, 469 U.S. at 67, 105 S. Ct. at 478).

---

[5] The apparent inconsistency in the jury's verdicts has minimal effect on the legal soundness of Wein's conviction on the obstruction count. The product of a jury's deliberations often reflects the interplay of a host of factors, including compromise and lenity. Inconsistent verdicts, standing alone, do not warrant the setting aside of the jury's work product. *United States v. Powell*, 469 U.S. 57, 64–66, 105 S. Ct. 471, 475–78 (1984) (citing *Dunn v. United States*, 284 U.S. 390, 393, 52 S. Ct. 189, 190 (1932)).

Therefore, the Defendant's Motion for Judgment of Acquittal will be denied. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: May 18 2012
Richmond, VA